## DANIEL BRADSTREET *et al. versus* ERASTUS CLARK.

A testator devised his real estate to his wife for her life, and bequeathed certain sums of money to three of his children, to be paid at the decease of his wife, and to another child he devised the reversion of the real estate, on condition that the devisee should pay the three legacies. At the time of the testator's death, and ever since, one of the three legatees was not within the State. It was *held*, that before there could be a forfeiture of the estate by reason of the non-payment of the legacy to such absent legatee, a demand of payment of the same was necessary.

*Held* also, that the time for making such a demand was not restricted to the lifetime of the conditional devisee.

The agent of such legatee, on making a demand on the tenant of the land, stated that he had a power of attorney, but the tenant said he did not doubt his word and did not wish to see it. *Held*, that under these circumstances, the non-production of the power did not vitiate the demand.

A demand of payment of the three legacies, two of them having been already paid, was *held* not to be a legal demand to create a forfeiture of the estate, though it might be sufficient to sustain an action at law for the legacy.

WRIT of entry to recover three fourths of a parcel of land in Topsfield.

Trial before *Shaw* C. J.

The demandants and the tenant both claimed title under Henry Bradstreet. He died seised of the land in 1819, leaving the three demandants, Daniel Bradstreet, William Bradstreet and Abigail Kilham, together with Nathaniel Bradstreet, his children and heirs at law. By his last will he gives to his wife all his personal estate, and the use of all his real estate during her life. The next item is : — " I give and bequeath to my son Daniel Bradstreet the sum of ten dollars, to be paid to him or his heirs by my executor hereafter to be named, at the decease of my said wife ; which sum, in addition to what I have heretofore given him, I consider as his full share of my estate." He then gives, in similar terms, $10 to his son William, and $200 to his daughter Abigail. He then proceeds : — " I give, devise and bequeath to my son Nathaniel Bradstreet and to his heirs and assigns forever, the reversion of all my real estate expectant at the decease of my said wife ; together with all the rest, residue and remainder of all my estate, both real and personal, of every name and quality ; on condition that he pay all the abovenamed legacies and bequests according to the true intent and meaning hereof    And I do

hereby constitute and appoint my said son Nathaniel sole exec-
utor of this my last will and testament."

The will was duly proved. The widow entered under it,
and died on June 6, 1820. Nathaniel, the executor and resid-
uary devisee, entered and held the land till his death, in 1828.
John Porter was appointed administrator on his estate. In
April, 1829, the widow and heirs of Nathaniel conveyed the
land to Clark, the tenant, in fee with warranty.

The ground of the demandants' claim was, that the devise
to Nathaniel was upon a strict condition of paying the legacies
according to the tenor of the will; that the legacy to Daniel
had not been paid; that the demandants, as heirs at law, enter-
ed upon the land for condition broken, and thereby became
seised, and thus might maintain the action on their own seisin.

Daniel Bradstreet went into the western States more than
thirty years ago, and had never returned. Evidence was of-
fered for the purpose of showing that a demand was made on
the executor by Daniel, or by some person in his behalf, for
his legacy, soon after the death of the widow, and that the
executor refused to pay it. This evidence was left to the
jury, with instructions that it was not the duty of Nathaniel, as
executor or devisee, to seek the legatee and pay him, but to
prove a non-payment of the legacy so as to work a forfeiture,
(if such non-payment would work a forfeiture, which was a
question reserved,) it must appear that a demand was made on
the executor by the legatee, or by some person duly authorized
by him to receive payment and give a receipt and acquittance;
that if such a demand and a refusal were proved, they should
find a verdict for the demandants, otherwise for the tenant.
The verdict was for the tenant.

It was therefore to be taken as settled by the verdict, that
no demand had been made on Nathaniel Bradstreet in his life-
time. No evidence was offered of any other demand until after
the conveyance of the land to the tenant.

Oliver Kilham testified, that in September, 1832, he went
with William Bradstreet to the tenant, at his house. William
asked the tenant if he was willing to pay the legacies which
William's father had given by his will. William said he had a
power of attorney from his brother to receive his; he had it

in his pocket and would show it to the tenant if he wished to see it. The tenant said he did not dispute his word and did not wish to see it. William then said, " Are you ready to pay the legacies ; if you are, I am ready to receipt for them." The tenant said, " I have bought the place once and paid for it, and it does not belong to me to pay them ; you have had your pay, as I understand, and there are receipts, and I will do nothing about it."

The tenant objected to this demand, as a demand for Daniel's legacy, because no authority was exhibited, but this ground of objection was waived. Another ground, on which he insisted, was, that this being a demand on a stranger for all the legacies, two having been paid, was not a good demand for Daniel's alone.

The same witness testified, that a few days after, they went to Newburyport, to the house where the widow and heirs of Nathaniel lived, and William made a similar demand on them ; that the eldest daughter said to William, that he and Mrs. Kil ham had had their pay ; that William said he had a power of attorney from Mrs. Kilham and Daniel, and asked the daughter whether she was willing to pay the legacies, and she refused to pay them ; that they then went to Porter, the administrator of Nathaniel, and William asked him if he would pay the legacies, and said he had come with a power of attorney from his brother Daniel and sister, Mrs. Kilham, to collect them ; and that Porter said he had finished the settlement of the estate and put the papers out of his hands, and could do nothing more about it.

The same witness testified, that on November 7, 1833, he went with William to the tenant's and found him in his shop, and William said, " I have repeatedly called for those legacies and have not got payment, and I now come to demand and take possession of three quarters of the place, for myself, Daniel, and Mrs. Kilham." The tenant said he should not give up the land before he was obliged to.

The tenant proved, that on November 20, 1833, after the commencement of this action, a tender was made in behalf of the tenant and also in behalf of the heirs at law of Nathaniel, to William as attorney of Daniel, of the amount of Daniel's

Bradstreet
v.
Clark.

legacy with interest from the time it was payable, which William did not accept.

If the whole Court should be of opinion, that by law the demandants were entitled to recover, the verdict was by consent to be altered, so as to stand as a verdict for the demandants; otherwise judgment was to be entered on the verdict for the tenant.

Nov. 9th,
1836.

*Saltonstall* and *Choate*, for the demandants. This was clearly a devise on condition, and the condition must be strictly performed. No demand on the executor and residuary devisee was necessary, but it was incumbent on him to see that the condition was performed, and for that purpose, to seek the legatee. 2 Pick. (2d edit.) 621, Perkins's note 2, and cases there cited. And this was to be done within a convenient time, to be measured by the circumstances of the case. The residence of Daniel out of the Commonwealth, makes no difference, his removal from Massachusetts having taken place before the making of the will. *Bixby* v. *Whitney*, 5 Greenl. 192. But if his residence was important, then when it was known that he was represented by William, a convenient time had arrived for paying the legacy, and the non-payment since that time constituted a breach of the condition, without any demand.

Assuming that a demand was necessary, the demandants contend that the condition was still subsisting on the day when the demand was made, and that the tenant held subject to the condition. *Gore* v. *Brazier*, 3 Mass. R. 542; Cruise's Dig. tit. 12, *Trust*, c. 4, § 18; Bac. Abr. *Condition, P*; Cruise's Dig. tit. 13, *Estate on Condition*, c. 2, § 6; Lit. § 336, 337.

The demand made for the legacy to Daniel, was not vitiated by being included in one general demand for that and the other two legacies. No one was misled by the form of the demand, and it afforded the parties interested a fair opportunity to perform the condition. It was such as would give a right of action against an executor for a legacy, and if so, it was sufficient to give a right of entry. *Miles* v. *Boyden*, 3 Pick. 213; *Bank of Rochester* v. *Gould*, 9 Wendell, 279.

*Gerrish* and *Cushing*, for the tenant. Had it been the duty of the executor to seek after the legatee, in order to tender

performance of the condition, the absence of Daniel from the State would have excused the non-performance.    5 Vin. Abr. 256, 257, *Condition* (U. c.) ; 2 Ld. Raym. 750.    But where there is any proviso in a deed, will, &c. *nomine pœnæ*, there must be an actual demand of performance ; and this principle applies with the greater force in this Commonwealth, where it is not necessary to resort to a court of equity, in order to compel payment of a legacy.    2 Ld. Raym. 750 ; *Cranley v. Kingswell*, Hob. 207 ; *Oates v. Brydon*, 3 Burr. 1896 ; 6 Petersd. Abr. 70, note ; 5 Dane's Abr. 320, § 13 ; *Deeks v. Strutt*, 5 T. R. 690 ; 2 Roper on Legacies, 539 ; *Farwell v Jacobs*, 4 Mass. R. 634 ; *Montresor v. Williams*, 1 Roper on Leg. 610 ; *Prescott v. Parker*, 14 Mass. R. 428.

The demand made was not a legal demand, because it was not made during the life of the executor.    After his death the only remedy was by a suit at law for the legacy.

It was also invalid, because payment was demanded of three legacies, two of which had been paid.    It should have been a demand of Daniel's legacy, unaccompanied by any collateral requisition.    The refusal was a refusal to comply with the demand as made.    *Glasscott v. Day*, 5 Esp. R. 48 ; *Huxham v. Smith*, 2 Campb. 21 ; *Thayer v. Brackett*, 12 Mass. R. 450 ; *Miles v. Boyden*, 3 Pick. 213.

DEWEY J. delivered the opinion of the Court.    The tenant derives title through the widow and heirs at law of Nathaniel Bradstreet, who held the estate under the will of his father, Henry Bradstreet.    By the provisions of that will all the personal estate was given to the wife of the testator and also the use of all the real estate during her life, ten dollars to each of the demandants, Daniel and William Bradstreet, and two hundred dollars to the testator's daughter, Abigail Kilham, the other demandant, which money legacies were to be paid at the decease of the wife of the testator ; and then follows the devise to Nathaniel Bradstreet, of the reversion of the real estate of the testator at the decease of his wife, and also a devise to him of all the residue and remainder of all his estate, both real and personal, *on condition* that he should pay all the abovenamed legacies and bequests.    This devise to Nathaniel Bradstreet was

*Bradstreet*
*v.*
*Clark.*

*April term*
*1839.*

clearly a conditional devise, and to entitle the devisee to hold under it, he must perform the conditions annexed to it.

Admitting this to be the proper construction of the devise, the tenant insists that there has been no breach of the condition upon which the estate was devised, and no forfeiture of the premises demanded, because there has been no legal demand of the legacy to Daniel Bradstreet, which is the only legacy remaining unpaid.

The demandants insist that no demand was necessary on the part of the legatee, but if it were, that the facts in the case prove such a demand to have been made. It is said that the devisee, taking the estate upon condition, was bound to search out the legatee and tender him the legacy, and upon failure to do so within a reasonable time, there would be a forfeiture of the estate so devised.

Considering the nature of the original claim of Daniel Bradstreet, that it was in fact a legacy given in proper terms as such, although the payment of it by the executor was made a condition of the devise to him, it would seem to be the duty of the legatee in such a case to request the payment of the legacy, and that until this was done there would be no forfeiture of the estate, occasioned by any non-payment of the legacy. If the rule be a reasonable and just one, requiring in ordinary cases a demand upon an executor for a legacy before he can be subjected to an action at law for the same, there are stronger reasons for its application to a case like the present, where the consequence of the supposed neglect of duty is the forfeiture of an entire estate. If, however, a distinction exists between the ordinary cases of a legacy to be paid by an executor, and a legacy the payment of which is made the condition of holding an estate devised, as some authorities seem to indicate, and if in the latter case, the general rule would be, where no place is stated in the condition prescribing the payment, that the party who is to pay the money must at his peril seek out the party to whom it is to be paid, the rule must be taken with the well known exception, that if he be not within the Commonwealth, the conditional devisee is not bound to seek him, and the condition in such a case is not broken. Sheppard's Touchstone, 136.

In the present case it is admitted, that Daniel Bradstreet left this Commonwealth more than thirty years since for the western States, and has not returned during that period.

The Court are therefore of opinion, that before there would be a forfeiture of the estate devised to Nathaniel Bradstreet, by reason of the non-payment of the legacy to Daniel Bradstreet, a demand of the payment of the same was necessary.

Was such a demand made ? As regards the objection that the demand should have been made upon Nathaniel Bradstreet, in his lifetime, we are not aware of any legal principle thus restricting the time of making the demand. If it were so, it might happen that by reason of the early death of the conditional devisee, the period for making the demand might be limited to a single month or even a day. Such a doctrine might do great injustice to legatees. Nor can we perceive any objection to the sufficiency of the demand, because the agent making the same did not exhibit to the tenant his power of attorney, or written authority, to make such a demand. A similar question arose in the case of *Roe, on demise of West, v. Davis,* 7 East, 364, which was an action to recover possession of certain real estate for an alleged forfeiture for condition broken, and the court held if the agent had a power of attorney and thus stated, it was sufficient, if the party was satisfied and did not request the production of it. If an exhibition of the authority for making the demand would have been necessary under other circumstances, clearly it was not so in the present case, as the tenant waived all objections of that kind, by saying to the agent, " he did not dispute his word and did not wish to see it."

But another objection is presented, of a much more serious character, and which we think well entitled to consideration. It is said, that as the demand was general and included three legacies, two of which had been already paid, it was not a good demand of the legacy to Daniel Bradstreet, which alone remained unpaid.

If the question be, whether from all the evidence in the case, there was enough done to constitute a demand sufficient for enforcing by a suit at law the recovery in money of the legac unpaid, we shou'd have no hesitation in answering in the affirmative.

If the defence can be maintained at all, it is upon a distinc tion to be taken between the case of a demand for the ordinary purpose of laying the foundation of a suit or proceeding at law to enforce the payment of money, and a demand which shall operate to cause a forfeiture of an estate held on condition. Is there such a distinction? I think it may be confidently asserted that such a distinction is recognised in books of un- doubted authority, and that in the case of a demand which shall operate to avoid an estate, much greater strictness is required.

The principle has been often applied to the cases of lease- hold estates held upon condition of paying a stated rent at certain stipulated times, and a distinction made between a demand sufficient to authorize a distress to enforce the payment of rent, and a demand of the rent where the whole lease was to be defeated upon failure to make payment, and the rule has been to require much greater precision in the form of the de- mand in the latter case, than in the former.

The principle is recognised in Co. Litt. 144 *a*, 153 *b*, 202 *a*, *in notis* ; *Maund's Case*, 7 Coke's Rep. 112 ; *Doe* v. *Wind- lass*, 7 T. R. 117.

It is more fully stated in Serjeant Williams' notes to 1 Saund. 286, (note 16,) where it is said, " where there is condition of re-entry reserved for non-payment of rent, the demand must be of the precise sum due ; for if the demand be of a penny more, or penny less, it will be ill."

It will be found that many restrictions as to the time and place of making a demand that shall operate to avoid an estate, are stated, which are not regarded in a demand for other purposes.

The recent case of *Doe* v. *Paul*, 3 Carr. & Payne, 614, sustains the same doctrine. This was a case where it was contended that a forfeiture had accrued by reason of non- payment of rent, it being stipulated in the lease that if the rent, which was payable quarterly, should be in arrear twenty-one days, the lessor should have a right to re-enter, but it appearing in evidence that the lessor demanded £ 193, whereas the exact quarter's rent was £ 75, it was held that the demand was not good, and a failure to pay on such a demand the £ 75, which was legally demandable on that day, would not cause a

forfeiture of the estate.   This rule is certainly just, as well as
liberal, and calculated to protect one holding an estate upon
condition from embarrassment by reason of unfounded claims,
or an uncertainty as to the proper sum to be paid by him.
The precise amount due and payable is to be stated by the
person making the demand, and this at the peril of him who
seeks to enforce his claim, and until this is done the neglect
to make the payment is not to work a forfeiture.

The application of this rule seems quite as proper in a case
like the present, as in those to which it has been so frequently
applied.   The tenant was not a party interested in the estate
of the late Henry Bradstreet, and is not to be supposed to have
had personal knowledge as to the payment or non-payment of
the three legacies.   The demand was of the payment of the
legacies which Henry Bradstreet had given in his will.   All were
demanded and the payment of all was equally insisted upon.
It is now conceded that two of these legacies, amounting to
the sum of two hundred and ten dollars, had already been paid,
and the only legacy then remaining unpaid was that to Daniel
Bradstreet, of ten dollars.   This was a demand of something
exceeding " a penny more," and falls within the rule stated in
Saunders, before cited.   It was a false claim, and its effect
might well be to induce the tenant to omit the making of any
payment, while on the other hand, if the only true and just
claim, that for ten dollars, had been stated, he might have
discharged it.   How that would have been, we know not.
It is sufficient that such might have been the operation of it,
and therefore the party making a false claim shall not make it
the foundation of a forfeiture of the estate.

Approving as we do the rule before alluded to, requiring
greater precision and more perfect accuracy in a demand which
shall subject the party to a forfeiture of an estate, the Court
are of opinion, that no such demand was made in the present
case as would operate to divest the tenant of his estate in the
premises for a breach of condition annexed to the devise to
Nathaniel Bradstreet.

*Judgment on the verdict*